No. 73.—JOHN MOORE, administrator of George Moore, deceased, plaintiff in error, *vs.* BASIL A. WISE, defendant in error.

[1.] To authorize this Court to grant a new trial on the ground that the verdict is not supported by the evidence, the verdict must be one " decidedly and strongly against the weight of the evidence," and one in favor of which there is only " some slight evidence."

Case, in Bibb Superior Court.    Decided by Judge POWERS, May Term, 1856.

This was an action brought by plaintiff in error against defendant in error, to recover damages for breach of a contract to repair the roof of a warehouse belonging to plaintiff's intestate in the city of Macon.

The case came on to be tried in the Court below, when the following testimony was submitted to the Jury:

Plaintiff introduced a written proposal of defendant to do the work, which is as follows: " Proposal for tinning valleys, painting and repairing the whole of the roof of Field & Adam's warehouse."

" I propose to put in a new valley around both the inner and outer wall four feet wide, laid over the old valley, soldered and made perfectly tight.    There is in the whole valley fifty-two squares, ninety-six feet, which I will lay down for five hundred and twenty-nine dollars.    There is in the whole roof two hundred ninety-nine and a half squares, which I will repair and paint with two good coats of fire-proof paint for five

hundred and twenty-five dollars, or for one dollar twenty-five cents per square. Doing the work in a reasonable time, after allowing time for ordering tin, paints and oils from New York. (Signed,)

B. A. WISE."

WASHINGTON POE sworn, stated that plaintiff's intestate paid defendant $1.102 for the work specified in the contract; and that the above proposal was accepted and was the contract under which the work was done.

AMBROSE CHAPMAN sworn, stated that he bought the warehouse upon which the work was done, by defendant, from plaintiff soon after the work was done, and that owing to the bad condition of the roof, he took plaintiff's bond, conditioned to make the roof right; that afterwards, plaintiff desiring to be relieved from his bond, asked him what he considered it reasonably worth to repair the roof; that he estimated it worth $500, but took $400 and delivered up the bond; he knew nothing of the contract to repair the roof, nor does he know whether the leaking was owing to the defective manner in which the work was done; the roof leaked badly soon after defendant did the work.

C. G. WHEELER sworn, stated that soon after defendant repaired the roof, the room occupied by him in said warehouse leaked badly, and nearly as bad as before the work was done; that it leaked in one place immediately under one of the valleys. The balance of the roof leaked, but he did not know much about any other part of the warehouse except the room he occupied; he knows nothing about the contract between plaintiff and defendant; does not know how defendant executed it, or whether the leaking was owing to the manner in which he executed it.

JOHN HOLLINGSWORTH testified, that he is in the habit of visiting the warehouse in question; knows when defendant repaired the roof; the roof leaked soon after the work was done. Taking into consideration that the work was to cost $1.102, to make it good would require one-half—say $500;

he knows nothing of the contract and nothing about the manner of its execution, or about the damages that plaintiff ought to recover for its unfaithful execution.

JAMES W. KNOTT testified, that he was familiar with the warehouse both before and after the repairs were made by defendant; the roof leaked badly before the repairs were done; since then it leaks in the said house upon the desk where the books are kept—so much so that when it rains the books have to be removed to another place; it leaks under the valleys all around the wall—so much so that the cotton has to be removed to prevent it from being injured when it rains; he knows nothing about the contract or the manner in which it was executed by defendant.

Plaintiff closed and defendant introduced the following testimony:

JAMES A. NISBET testified, that he was the agent of plaintiff's intestate to make the contract for the work. The instrument introduced by plaintiff contains the terms of the contract; the money was paid by plaintiff for the work, amounting to $1.102; the work, when done, was accepted by him for said George Moore, and he considered the work done according to contract.

WM. B. BENNETT testified, that he is a tinner by trade; has been in the trade since he was fifteen and a half years old—13 years; that he did the tin work upon the roof for defendant and saw the painting done; the tin work upon the valleys was done as well as he could do it, and he considered it well done; the old tin roof was not soldered, but the tin was lapped over and white lead put in, and when it became heated by the sun it would pull apart; the whole roof was repaired and painted; witness and defendant looked carefully over the roof and repaired every defective part; defendant, he thought, had more done than the contract required; while the contract was going on, and after the valleys were repaired, the water stood in the valleys; the wooden sheeting was of plank, tongued and grooved, and he thinks the water got under the tin above and ran down under the valleys, which

Moore, adm'r, *vs.* Wise.

.he thinks caused it to leak under the valleys ; the materials used were of good quality.

JOHN B. ROSS testified, that about the time defendant did the work for George Moore, he sold him paints, &c. and they were of good quality.

The Jury found a verdict in favor of defendant.

Whereupon, plaintiff moved for a new trial on the following grounds :

1st.  Because the Jury found contrary to law.

2d.  Because the Jury found contrary to the testimony and the justice of the case.

The Court refused a new trial, and plaintiff's Counsel excepted.

POE & GRIER, for plaintiff in error.

E. A. & J. A. NISBET, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

[1.]  The motion for the new trial was put on these grounds: That the verdict was contrary to law.

That it was contrary to the evidence and to the justice of the case.

There is nothing in the case to make the verdict contrary to law or the justice of the case, unless it be true that the verdict was contrary to the evidence.   The only question, therefore, is, was the verdict contrary to the evidence ?

In order to authorize this Court to grant a new trial, on the ground that the verdict is contrary to the evidence, it is necessary that the verdict should be one which is " decidedly and strongly against the weight" of the evidence—one in favor of which there is only " some slight evidence."   (*Acts* 1853–'4, 47.)

This, we think, is not such a verdict.   There is a good

deal of evidence in favor of this verdict—perhaps as much as. there is against it.

We must, therefore, affirm the judgment.